UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JONATHAN RANGEL, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>DMV PROTECTION, LLC and JOVAN VLADIC<br><br>Defendants. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Jonathan Rangel, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), by his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### INTRODUCTION

1. This is a "hybrid" Fair Labor Standards Act (FLSA) collective action and a Rule 23 class action brought to remedy Defendants' DMV Protection, LLC (d/b/a Washington DC Security Service, Virginia Security Service, Maryland Security Service, and DC MD VA Security Service) (hereafter collectively "DMV Protection"), and Jovan Vladic's (together "Defendants") unlawful misclassification of employees as independent contractors, and the resulting failure to pay Plaintiffs overtime premium pay as required by the FLSA and wages provided by the state laws of Virginia, Maryland, the District of Columbia, and any other state where there are sufficient current and former DMV Protection workers to certify a class. Plaintiff brings this action as a collective action under 29 U.S.C. § 216(b), and for the state law claims only, as a class action under Federal Rule of Civil Procedure 23.

1

2. Plaintiffs seek unpaid overtime wages, statutory damages, liquidated damages, costs and attorneys' fees as well as declaratory relief under the FLSA, 29 U.S.C. § 201 *et seq.*;

3. Plaintiffs also seek unpaid wages, including overtime and regular wages, liquidated damages, treble damages, interest, costs and attorneys' fees as well as other remedies and declaratory relief under the state laws listed below:

   a. Virginia Overtime Wage Act, Va. Code § 40.1-29.2; Virginia's Wage Payment Act, Va. Code § 40.1-29, and; Virginia's statute prohibiting misclassification of workers, Va. Code § 40.1-28.7:7;

   b. Maryland's Overtime statute, Md. Labor and Employment Code Ann. § 3-420; Maryland's Payment of Overtime statute, Md. Labor and Employment Code Ann. § 3-415; Maryland's statute providing for action against employer by or for employee, Md. Labor and Employment Code Ann. § 3-427, and; Maryland's statutory provisions prohibiting unauthorized deductions from wages, Md. Labor and Employment Code Ann. § 3-503 and § 3-507.2;

   c. District of Columbia Minimum Wage Revision Act, D.C. Code §§ 32-1003, 32-1012 and District of Columbia Payment and Collection of Wages law, D.C. Code §§ 32-1302, 32-1308;

   d. The state wage and hour laws of any other applicable states.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the Fair Labor Standards Act, by 28 U.S.C. § 1331, this action arising under the laws of the United States, and by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce.

5. This Court has supplemental jurisdiction over any state claim raised by virtue of 28 U.S.C. §§ 1332, 1367(a).

6. The Court has personal jurisdiction over DMV Protection, as DMV Protection is headquartered and resides within the Eastern District of Virginia.

7. The Court has personal jurisdiction over Jovan Vladic because he resides within this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events, acts, or omissions giving rise to the claims occurred in this District and because DMV Protection is headquartered in this District.

## PARTIES

### A. Plaintiffs

9. Named Plaintiff Jonathan Rangel is a citizen and resident of Virginia. His consent to sue is attached to this Complaint.

10. Plaintiff Rangel worked for Defendants as a Security Guard from approximately September 2024 through March 2025.

11. Although Defendants classified Plaintiff Rangel as an "independent contractor," he was an employee of DMV Protection.

12. Plaintiff Rangel was engaged in commerce while working for Defendants.

13. The term "Plaintiffs" as used in this complaint refers to the Named Plaintiff Jonathan Rangel, any additional represented parties pursuant to the collective action provision of 29 U.S.C. § 216(b), and to such members of the class brought pursuant to Fed. R. Civ. P. Rule 23, as described below, individually, collectively, or in any combination.

### B. Collective Plaintiffs under the FLSA

14. The Named Plaintiff brings this case as a FLSA collective action for a collective consisting of all security officers who worked for DMV Protection and were classified as independent contractors and worked more than 40 hours in a workweek without being paid one and one half times their regular rates of pay within three years of the filing of the Complaint to the final date of judgment in this matter ("FLSA Collective").

15. The collective action class consists of such individuals who worked for DMV Protection anywhere in the United States.

### C. Class Plaintiffs under State Wage and Hour Laws

16. The Named Plaintiff brings this case as a Rule 23 Class Action for class members consisting of all security officers who worked for DMV Protection within the applicable statute of limitations period and until the date of final judgment in this matter under the laws of the states where there are sufficient current and former DMV Protection workers to certify a class, including but not limited to Virginia, Maryland, and the District of Columbia ("Rule 23 Class" or "Security Guards").

17. Although the precise number of such persons is unknown, and the facts upon which that number can be calculated are presently within the sole control of the Defendants, upon information and belief the class is composed of hundreds of individuals, with at least 40 individuals each in Virginia, Maryland, and District of Columbia.

18. There are questions of law and fact common to the class, including but not limited to:
    a. Whether Plaintiffs were misclassified as independent contractors;
    b. Whether Plaintiffs were properly compensated for all hours worked;

    c. Whether Plaintiffs were entitled to premium overtime pay at the rate of time and a half for hours worked over 40 in a workweek;

    d. Whether Defendants suffered or permitted Plaintiffs to perform more than 40 hours of work without paying time and one-half premium pay, and;

    e. Whether Plaintiffs' wages were unlawfully withheld pursuant to Defendants' late arrival policy, early departure, and Daily Activity Report submission policies.

19. The claims of the Named Plaintiff are typical of the claims of the class because all of the class members were subject to the same corporate policies and practices of Defendants.

20. Plaintiff Rangel will fairly and adequately represent and protect the interests of the Class. He understands that, as a class representative, he assumes fiduciary responsibility to the Class to represent their interests fairly and adequately. Plaintiff Rangel recognizes that as a class representative he must represent and consider the interests of the Class just as he would represent and consider his own interests. He understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Class. He recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the interests of the Class. Plaintiff Rangel understands that to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in his possession, and testify, if required, in a deposition and at trial.

21. Plaintiff Rangel has retained counsel competent and experienced in complex class action employment litigation.

22. Common questions of law or fact predominate over individual questions and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

23. Plaintiff reserves the right to propose amended class or collective definitions and/or sub-classes in his motions for collective action and/or class action certification, or to add additional class claims under Rule 23 of the Federal Rule of Civil Procedure, to the extent discovery warrants such amendments or subclasses.

### D. Defendants

24. DMV Protection is headquartered in Fairfax, Virginia. The Virginia State Corporation Commission database lists its address as 10519 West Drive, Fairfax, VA 22030.

25. DMV Protection is in the business of providing security personnel to customers. DMV Protection provides the personnel to secure its clients' facilities and events, as well as provide personal protection.

26. DMV Protection provides its services throughout Virginia, Maryland, and the District of Columbia.

27. Defendant Jovan Vladic is the owner of DMV Protection.

28. Upon information and belief, Defendant Jovan Vladic resides at 11317 Stonehouse Place, Sterling, VA 20165-5122.

29. Upon information and belief, DMV Protection grossed more than $500,000 in each of the past three fiscal years.

30. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA.

31. Upon information and belief, as the owner and corporate officer of DMV Protection, Jovan Vladic is a joint employer under the FLSA and applicable state law.

## FACTS

32. DMV Protection is a security company that provides security personnel services to customers in Virginia, Maryland, and the District of Columbia for protection.

33. DMV Protection's services include, but are not limited to, hotels, buildings, loss prevention, fire watch, emergency and disaster response, dispensary security, front desk security, transportation of valuables, VIP transportation, construction site security, school security services, healthcare and hospital services, warehouse security, private investigations, executive and personal protection, diplomatic security and security consulting.

34. Plaintiff Jonathan Rangel worked for DMV Protection Services as a Security Guard at a hotel in Virginia from approximately September 2024 to March 2025.

35. Defendants classified Plaintiffs as independent contractors.

36. Plaintiff and other Security Guards' job duties included securing the building, monitoring guests, entry control, and writing reports each patrol.

37. Plaintiffs' work providing security services as Security Guards is an integral part of Defendant's business, which is providing security personnel to clients.

38. Defendants misclassified Plaintiffs, including Named Plaintiff Rangel, as independent contractors even though they were employees under federal and applicable state law.

39. Plaintiffs were economically dependent on Defendants. For example, while Named Plaintiff Rangel worked at DMV Protection, it was his only job.

40. Plaintiffs were subject to a high degree of control by Defendants when working. For example, Defendants scheduled Named Plaintiff Rangel and other Security Guards for shifts and decided their hours. Defendants require Plaintiffs to "clock in" when starting their shift, with specific requirements on how and when to do so, and "clock out" at the end. Defendants

monitored Plaintiffs' work to ensure they complied with company policies and procedures. Plaintiffs were required to submit daily activity reports (DARs) stating whether or not any incidents had occurred. Plaintiff Rangel submitted these DARs multiple times during each shift to DMV Protection through the NovaGems application.

41. Defendants retained the authority to hire and fire Plaintiffs.

42. Defendants had the authority to discipline Plaintiffs.

43. Defendants required Plaintiffs wear a uniform and in some cases provided that uniform. The uniforms included DMV Protection's logo.

44. Defendants required Named Plaintiff Rangel to purchase a uniform for work.

45. Plaintiffs did not have an opportunity for profit or loss based on their managerial skill. Defendants paid Plaintiffs by the hour. Defendants paid Named Plaintiff Rangel $19.00 per hour. The money the Named Plaintiff and other Plaintiffs made was entirely dependent on the number of hours they worked.

46. Defendants set the rate of compensation that Plaintiffs received.

47. The compensation that Plaintiffs received did not vary based on the quality of their work.

48. Plaintiffs were compensated based on the hours they worked.

49. Plaintiffs could not affect their rate of compensation other than to work more hours and/or days, at the discretion of Defendants.

50. Plaintiffs regularly worked more than 40 hours in a week for Defendants. For example, Plaintiff Rangel regularly worked from approximately 11:00pm to 7:00am, six to seven days a week. As such, he was regularly working approximately 48 hours to 56 hours in a week.

51. Defendants knew or should have known that Plaintiffs regularly worked more than 40 hours per week because Defendants regularly scheduled Plaintiffs to work more than 40 hours per week.

52. In addition to scheduling Plaintiffs for over 40 hours of work in a week, Defendants knew or should have known that Plaintiffs regularly worked over 40 hours per week because Defendants tracked Plaintiffs' hours.

53. Defendants required Plaintiffs to clock in at the beginning of each shift and clock out at the end of each shift using an application called "NovaGems Staff."

54. When Plaintiffs worked more than 40 hours in a workweek, Defendants only paid the hourly rate, and not time and one-half overtime pay premium.

55. For example, Plaintiffs' promised base hourly rate was $19. For the two week pay period 11/18/24 to 12/01/24, Plaintiff worked approximately 112 hours, including at least 32 overtime hours. Defendants only paid him $1,928.50, which constitutes payment of only his base hourly rate of $19 for 101.5 hours. Defendants paid no overtime premiums.

56. Defendants further had a policy and practice of withholding and not paying Plaintiffs' earned wages under various circumstances. For example:

    a. Defendants required Plaintiffs to sign a contract including a late policy wherein Plaintiffs' pay was withheld upon late arrivals. Plaintiff Rangel's contract states:

        Every late arrival shall round independent contractor's absent time in one hour increments; [sic] For example, if Independent Contractor comes in at 9:01 or 9:10 rather than at 9:00 when he was scheduled to report for duty, Independent contractor [sic] allowable time shall be reduced by 60 minutes, if Independent Contractor comes in at 9:31 Independent Contractor allowable time shall be reduced by 90 minutes.

    b. Named Plaintiff Rangel was late on several occasions such that Defendants docked his pay by one hour. On at least one occasion, Named Plaintiff Rangel was late such that Defendants refused to pay him for 90 minutes of work.

    c. Defendants further required Plaintiffs to sign a contract including a policy wherein Plaintiffs' wages were withheld and forfeited for the day if the Plaintiff left before the scheduled end of his or her shift. The contract states:

> If an Independent Contractor leaves the site where the Independent Contractor was scheduled that day (abandoning the post, shift, or site) before the scheduled shift ends, the Independent Contractor will forfeit compensation for that day regardless, of the number of hours worked that day/shift.

    d. Defendants further required Plaintiffs to sign a contract including a policy wherein Plaintiffs' wages were withheld and forfeited if they did not submit Daily Activity Reports on time.

> If site requires DAR (Daily Activity Report), Independent Contractor shall submit DAR on daily basis via NOVAGEMS. Independent Contractor shall forfeit an amount equal to 1 (one) working hour if DAR is not submitted by next day.

57. Defendants did not provide Plaintiffs with itemized wage statements. For example, Plaintiff Rangel received payment statements that include only the total amount paid.

58. Plaintiffs are non-exempt employees under the FLSA and applicable state law, thus entitling them to premium pay at the rate of time and one-half the regular rate for all hours worked over 40 in a workweek.

59. Defendants' unlawful conduct as set forth in this Complaint has been intentional, willful, and in bad faith, constitutes a knowing failure to pay earned wages, and has caused significant damages to Plaintiffs.

60. Defendants' failure to pay Plaintiffs the proper wages required by law was willful where Defendants required Plaintiffs to work over 40 hours in a week, were aware they did actually

work over 40 hours in a week, and failed to pay them their overtime wages due for the hours worked.

61. All actions and omissions described in this Complaint were made by Defendants directly or through its supervisory employees and agents.

## COLLECTIVE ACTION ALLEGATIONS

62. Plaintiff Rangel brings his federal overtime claims under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of himself and all similarly situated persons consisting of the FLSA Collective as defined above.

63. To facilitate the right of FLSA Collective members to participate in this action, the Court should authorize the issuance of notice to these individuals informing them of their right to participate in this suit by filing a consent to sue form. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' common policies and practice of failing to pay required overtime wages for hours worked more than 40 in a week. These similarly situated individuals would benefit from the issuance of Court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated individuals are known to Defendants and readily identifiable through Defendants' records.

## FIRST CAUSE OF ACTION
## (FLSA OVERTIME)

64. At all relevant times, Named Plaintiff and the FLSA Collective were employees of Defendants under the FLSA.

65. At all relevant times, Defendants misclassified Plaintiff and the FLSA Collective as independent contractors.

11

66. Defendants failed to pay premium overtime wages to Plaintiff and the FLSA Collective in violation of the Fair Labor Standards Act, 29 U.S.C. § 203, 207 *et seq.* and its implementing regulations.

67. Defendants' failure to comply with the FLSA caused Plaintiff and the FLSA Collective to suffer loss of wages and interest thereon.

68. Defendants' failure to pay proper premium overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION
### (VIOLATION OF APPLICABLE STATE OVERTIME LAWS)

69. Defendants failed to pay premium overtime wages to the Named Plaintiff and Rule 23 Class Members in violation of applicable state overtime laws, including Virginia, Va. Code § 40.1-29.2 and -29.3; Maryland, Md. Labor and Employment Code Ann. § 3-420, Maryland's Payment of Overtime statute, Md. Labor and Employment Code Ann. § 3-415; and the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1003(c).

70. Defendants failed to pay premium overtime wages for each hour worked over the applicable state overtime threshold per week.

71. Defendants' failure to comply with state overtime laws caused Plaintiffs and Class Members to suffer loss of wages and interest thereon.

## THIRD CAUSE OF ACTION
### (VIOLATION OF APPLICABLE STATE WAGE PAYMENT LAWS)

72. Defendants unlawfully withheld wages from and failed to pay earned wages to Named Plaintiff and Rule 23 Class Members in violation of applicable state wage payment laws, including Virginia, Va. Code § 40.1-29, including §40.1-29(A) and (C); Maryland, Md. Labor and Employment Code Ann. § 3-503; and D.C. Code § 32-1302.

73. Defendants unlawfully required Plaintiff and Rule 23 Class Members to sign a contract providing for forfeiture of their wages for time worked as a condition of employment or the continuance therein, in violation of the Virginia Wage Payment Act, Va. Code § 40.29(D).

74. Defendants "knowingly failed to pay wages to an employee in accordance with [Va. Code § 40.1-29]." Va. Code § 40.1-29(J).

75. Defendants' failure to comply with state wage payment laws caused Plaintiff and Class Members to suffer loss of wages and interest thereon.

## FOURTH CAUSE OF ACTION
## (VIOLATION OF VIRGINIA MISCLASSIFICATION LAW)

76. Defendants failed to accurately classify Plaintiffs and Rule 23 Class Members who worked in Virginia as employees in violation of Virginia Misclassification Law, Va. Code § 40.1-28.7:7 ("VML"), which provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

77. Defendants had knowledge of the misclassification of Plaintiffs and Rule 23 Class Members.

78. Defendants' failure to correctly classify employees was willful within the meaning of Virginia state law.

79. At all times relevant, each Defendant has been, and continues to be, an "employer," and Named Plaintiff and each member of the Rule 23 Class who worked in Virginia has been, or continues to be, an "employee" within the meaning of the VML.

80. The VML, VA Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other

13

compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."

81. Defendants improperly classified Named Plaintiff Rangel and the Rule 23 Class who worked in Virginia as non-employees rather than employees, resulting in damages to Plaintiff Rangel and these similarly situated employees and a denial to Plaintiff Rangel and these similarly situated individuals of wages, salaries, and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits and workers' compensation insurance benefits), employer-side payroll taxes, and other benefits which they would have been entitled to receive if they had been properly classified as employees. Defendants had knowledge of the misclassification. Plaintiff Rangel for himself and similarly situated employees seeks all relief allowed by law for Defendants' violation of the VML.

82. Defendants' failure to comply with state employee classification laws caused Plaintiff Rangel and Rule 23 Class Members who worked in Virginia to suffer loss of wages and other employment benefits and interest thereon.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter an order:

A. Certifying this action as a collective and class action under § 216(b) of the FLSA and Rule 23(b)(3);

B. Ordering notice to the putative class members at the earliest opportunity to ensure class members' claims are not lost to the State and Federal statutes of limitations;

C. Designating Plaintiff Rangel as the Class Representative;

D. Designating the undersigned counsel as Class Counsel;

E. Entering a declaratory judgment that the practices complained of herein are unlawful;

F. Declaring that the Defendants violated the Fair Labor Standards Act and the wage and hour laws of Virginia, Maryland, the District of Columbia, and any other states where there are sufficient current and former DMV Protection workers to certify a class;

G. Declaring that Defendants' violations of overtime protections were willful;

H. Granting judgment to the Plaintiffs for their claims of unpaid wages as secured by the Fair Labor Standards Act as well as an equal amount in liquidated damages and awarding Plaintiffs' costs and reasonable attorneys' fees;

I. Granting appropriate equitable and injunctive relief to remedy DMV Protection's violations of state law, including but not necessarily limited to an order enjoining DMV Protection from continuing its unlawful practices;

J. Granting judgment to the Plaintiffs for their claims of unpaid wages pursuant to state overtime, wage payment, and misclassification laws as well as any other damages dictated by state law, including liquidated and treble damages and interest provided for under the laws of Maryland, Virginia, and the District of Columbia, and awarding the Plaintiffs' costs and reasonable attorneys' fees;

K. Pursuant to Va. Code § 40.1-29(J) awarding Plaintiffs who worked in Virginia "an amount equal to triple the amount of wages due and reasonable attorney fees and costs."

L. Granting all relief allowed by the VML including "damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action." Va. Code §40.1-28.7:7(A);

M. Granting pre- and post-judgment interest;

N. Granting reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it and

O. Granting such further relief as the Court finds just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Respectfully Submitted,

Dated: 8/4/2025

/s/Timothy Coffield_____

Timothy Coffield (VSB No. 83430)
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
434-218-3133 direct
434-321-1636 fax
Email: tc@coffieldlaw.com

Matt Dunn, Pro Hac Vice application to be filed
Jason Steuerwald, Pro Hac Vice application to be filed
Getman, Sweeney & Dunn PLLC
260 Fair St.
Kingston, NY 12401
Tel: (845) 255-9370
Fax: (845)255-8649
Email: mdunn@getmansweeney.com

Attorneys for Named Plaintiffs, those similarly situated, and the Rule 23 Class